**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION AT COLUMBUS**

| | | |
|---|---|---|
| BRIAN KEITH ALFORD, | : | Case No. 2:25-cv-187 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | District Judge Michael H. Watson |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| | : | |
| DR. HAWK, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**REPORT AND RECOMMENDATION[1]**

Plaintiff, Brian Keith Alford, a former federal prisoner currently in state custody at the Ross Correctional Institution (RCI), brings this *pro se* civil rights action under 42 U.S.C. § 1983 against RCI Defendants Dr. Hawk and Nurse Ragland and Ohio Department of Rehabilitation and Correction Director Annette Chambers-Smith.  Plaintiff alleges claims related to his medical care at RCI.  (*See* Docs. 1; 8).  This matter is before the Court on Plaintiff's motions for leave to proceed *in forma pauperis*.  (Docs. 7; 10).  For the reasons that follow, Plaintiff's motions for leave to proceed *in forma pauperis* (Docs. 7; 10) should be **DENIED**.

A.     **Legal Standard**

Congress has restricted a prisoner's right to proceed *in forma pauperis*.  In accordance with Section 804(d) of the Prison Litigation Reform Act ("PLRA") of 1995, Pub. L. No. 104-134, 110 Stat. 1321, amending 28 U.S.C. § 1915:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious,

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendation.

or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

The undersigned has determined that Plaintiff is a "three striker" as contemplated in § 1915(g) due to at least three lawsuits he filed that have been dismissed as frivolous or for failure to state a claim.  *See, e.g., Alford v. Wilkinson*, No. 2:97-cv-997 (S.D. Ohio), which the Sixth Circuit affirmed in *Alford v. Wilkinson*, 173 F.3d 428, 1999 WL 96732, at *1 (6th Cir. 1999) (Table); *Alford v. Wilkinson*, No. 2:98-cv-226 (S.D. Ohio), which the Sixth Circuit affirmed in *Alford v. Wilkinson*; 188 F.3d 506, 1999 WL 644375, at *1 (6th Cir. 1999) (Table); and *Alford v. Rice*, No. 3:10-cv-424 (S.D. Ohio), which the Sixth Circuit declined to adjudicate because it denied Plaintiff's request to proceed *in forma pauperis* on appeal (*see id*. (Doc. 27)).  *See also Alford v. Chambers-Smith*, No. 2:24-cv-4184 (S.D. Ohio) (Docs. 7; 19) (finding Plaintiff to be a "three striker").

In view of his three strikes, Plaintiff may not proceed *in forma pauperis* in this case unless he falls within the statutory exception set forth in 28 U.S.C. § 1915(g), which applies to prisoners who are "under imminent danger of serious physical injury."  To satisfy this exception to the three strikes rule, "the threat or prison condition 'must be real and proximate' and the danger of serious physical injury must exist at the time the [initial] complaint is filed."  *See Rittner v. Kinder*, 290 F. App'x 796, 797–98 (6th Cir. 2008) (citing *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003); *Abdul-Akbar v. McKelvie*, 239 F.3d 307, 313 (3d Cir. 2001) (en banc)).  *See also McFadden v. Noeth*, 827 Fed. App'x 20, 25 (2d Cir. 2020) (holding that, "in determining whether 'imminent danger' exists we 'constru[e] [the prisoner's] initial and amended complaints to raise the strongest arguments that they suggest' and analyze whether 'the facts alleged support a finding that he was in imminent danger at the time he filed his *initial* complaint.'") (alterations and emphasis added in

original).  Neither an assertion of past danger, *Rittner*, 290 F. App'x at 797–98, nor speculative future harm, *Shephard v. Marbley*, 23 F. App'x 491, 492 (6th Cir. 2001), are sufficient to invoke the exception.  Moreover, the type of physical injury alleged by a plaintiff must "have potentially dangerous consequences such as death or severe bodily harm" to qualify as "serious" under § 1915(g).  *Gresham v. Meden*, 938 F.3d 847, 850 (6th Cir. 2019).

### B.    Plaintiff's Allegations

The operative complaint in this case is Plaintiff's Amended Complaint.  (Doc. 8).  *See Calhoun v. Bergh*, 769 F.3d 409, 410 (6th Cir. 2014) ("An amended complaint supersedes an earlier complaint for all purposes.") (quotation and citation omitted).  In the Amended Complaint, Plaintiff alleges that, from December 7, 2024, to December 10, 2024, RCI medical staff delayed providing him with treatment for complaints that he was unable to urinate and in great pain.  (Doc. 8, *PageID* 44).  He alleges that when he went to medical on December 10, 2024, Defendant Hawk advised Defendant Ragland to "cathe" Plaintiff, but Ragland refused and instead placed Plaintiff in an observation room.  *Id*.  Plaintiff alleges that he was crying in the observation room and another nurse, who is not named as a defendant, "cathed" him at 10:15 a.m.  *Id*. at 44-45.  Plaintiff states that a mixture of blood and urine was removed from his body.  *Id*.  Plaintiff alleges that he was then given antibiotics and Ibuprofen and sent back to his housing unit.  *Id*.  The Court notes that in his initial Complaint, Plaintiff also alleges that he was given a shot for pain.  (Doc. 1, *PageID* 5).

Plaintiff states that from December 10, 2024, to December 23, 2024, he went to medical for medication but was forced to walk there, having to stop every four to five steps due to pain.  (Doc. 8, *PageID* 45).  He alleges that he passed blood clots in his urine from December 10, 2024, to December 17, 2024.  *Id*.  On December 17, 2024, Defendant Hawk advised Plaintiff to

3

discontinue the Ibuprofen. *Id*. On December 23, 2024, Plaintiff was sent to the Ohio State University Medical Center, where he remained until December 27, 2024. *Id*. According to Plaintiff, he had lost 36 pounds, and CT scans revealed that he had a double kidney infection, a blood clot on his left lung, and a cyst on his left kidney. *Id*. Plaintiff alleges that upon his return to RCI on December 27, 2024, he was placed in medical where he remained until January 2, 2025. *Id*. According to Plaintiff, he was released to general population with a "Fully-cathe," which he used until July 25, 2025, when he was switched to a "straight cathe." *Id*. at 45-46. Plaintiff alleges that since July 2025, he has been awaiting surgery on his prostate and continues to suffer pain. *Id*. at 46.

Plaintiff further alleges that, between August 2024 and July 16, 2025, his "PSA" levels increased from 11.6 to 12.7. *Id*. Additionally, he alleges that he has been denied Flomax medication for his "BPH" for extended periods of time "without justification" and, as of the time he filed his Amended Complaint, had been waiting for two weeks for a refill of his Flomax. *Id*. Plaintiff states that since December 23, 2024, he has been prescribed blood thinners, which he will take for the rest of his life, and he is in danger of suffering kidney failure or possible death if surgery is not completed. *Id*.

### C. Analysis

Although "alleging a danger of serious physical injury as a result of being presently denied adequate medical treatment" can satisfy the imminent-danger exception, *Vandiver v. Prison Health Services, Inc*., 727 F.3d 580, 582-83 (6th Cir. 2013), conclusory allegations are insufficient to do so. *See id*. at 585 ("To that end, 'district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory[.]'") (quoting *Rittner*, 290 F. App'x at 798) (alterations in original).

In this case, Plaintiff takes issue with the alleged delay in treating his inability to urinate in December 2024. But he filed his initial Complaint in February 2025 (Doc. 1) and his Amended Complaint in August 2025 (Doc. 8). At the time of filing his pleadings, Plaintiff was being actively treated for his alleged condition. Indeed, his own allegations show that he had seen medical staff at RCI, where he received a catheter, antibiotics, and Ibuprofen. (Doc. 8, *PageID* 44-45). He had also been seen by medical staff at the OSU Medical Center, where he received a CT scan and was admitted for treatment. *Id*. at 45. When he returned to RCI, he again received treatment from RCI medical staff, including a stay in medical and a change of his catheter. *Id*. Plaintiff's allegations also show that his PSA levels were monitored and he was prescribed blood thinners. *Id*.

To the extent that Plaintiff alleges that as of August 2025, he was awaiting surgery on his prostate, there are no factual allegations regarding a prescription for surgery or a timetable for such surgery. Similarly, other than his own conclusory assertions that his prescription for Flomax has been denied at times and a refill delayed, he fails to allege facts from which the Court can plausibly infer this alleged denial or delay placed him in imminent danger of serious physical injury, especially given his allegations showing that he was receiving treatment for his medical conditions during this same time period. (*See* Doc. 8, *PageID* 46 (noting Plaintiff's switch to a "straight cathe" in July 2025 and his prescription for blood thinners since December 2024)).

As this Court previously found in another case filed by Plaintiff in which he raised arguments similar to the allegations presented here, "Alford has not alleged facts from which the Court can plausibly infer that he was under an existing danger at the time he his Complaint due to the care he was (or wasn't) receiving." *Alford v. Chambers-Smith, et* al., No. 2:24-cv-4184 (S.D. Ohio) (Doc. 19, *PageID* 182). Rather, as the Sixth Circuit found in affirming the dismissal of a challenge by Plaintiff to treatment he received at the Toledo Correctional Institution, "[w]hen, as

here, a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Alford v. Zilles*, No. 22-3416, 2023 WL 3696315, at *2 (6th Cir. May 22, 2023) (internal quotation marks omitted). A dispute over the adequacy of medical treatment is not enough to invoke the imminent danger exception to the three-strikes rule. *See Freeman v. Mohr*, No. 2:11-cv-878, 2012 WL 5378827, at *4 (S.D. Ohio Oct. 30, 2012), *report and recommendation adopted*, 2013 WL 434023 (S.D. Ohio Feb. 5, 2013) (citing cases).

Because Plaintiff has accumulated "three strikes" but has failed to allege particular facts showing any immediate or impending serious physical injury in existence at the time he commenced this action, he does not meet the exception to the "three strikes" rule set forth in 28 U.S.C. § 1915(g).

### IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's motions to proceed *in forma pauperis* (Docs. 7, 10) be **DENIED** and he be ordered to pay the full $405 fee ($350 filing fee plus $55 administrative fee) required to commence this action within thirty (30) days, and that Plaintiff be notified that his failure to pay the full $405 fee within thirty days will result in the dismissal of his action. *See In re Alea*, 286 F.3d 378, 382 (6th Cir. 2002); and

2. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that for the foregoing reasons an appeal of any Order adopting this Report and Recommendation would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

February 18, 2026                                       *s/Peter B. Silvain, Jr.*
                                                        Peter B. Silvain, Jr.
                                                        United States Magistrate Judge

6

**PROCEDURE ON OBJECTIONS:**

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  Response to objections must be filed within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g., Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to the magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).